Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

INFINITI OF ENGLEWOOD, LLC et al.,

*Plaintiffs,*

v.

NISSAN NORTH AMERICA, INC.,

*Defendant.*

Civil Action No. 19-08806
(JMV)(JBC)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

Plaintiffs Infiniti of Englewood, LLC; Elite Nissan of Bergenfield, LLC; and Nissan of Hawthorne, LLC (collectively, "Dealers") sue Defendant Nissan North America, Inc. ("NNA") for violations of the New Jersey Franchise Practices Act, N.J.S.A. 56:10 *et seq.* ("NJFPA") and breach of the covenant of good faith and fair dealing. Currently pending before the Court is Defendant's motion, D.E. 4, to strike seven allegations from Plaintiffs' Complaint, D.E. 1. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78 and L. Civ. R. 78.1. For the reasons set forth below, Defendant's motion to strike paragraphs 3, 4, 7, 29, 30, 31, and 32 from Plaintiffs' Complaint is **DENIED**.

---

[1] Defendant's brief in support of its motion is referred to as "Def.'s Br." (D.E. 4-1); Plaintiffs' brief in opposition is referred to as "Pls.' Opp." (D.E. 11); and Defendant's reply is referred to as "Def.'s Reply" (D.E. 13).

## I. BACKGROUND[2]

Plaintiffs are car dealerships that entered into separate franchise agreements with Defendant, authorizing Plaintiffs to sell and service Infiniti and Nissan vehicles. Compl. ¶ 1, 13-18. Defendant is a manufacturer and distributor of Infiniti and Nissan vehicles, parts, and accessories. *Id.* ¶ 19. Plaintiffs accuse Defendant of, *inter alia*, violating various provisions of the NJFPA by "unlawfully 'stuffing' unwanted vehicles into [Plaintiffs'] inventories," "artificially inflating [Defendant's] sales figures by . . . falsely reporting sales under [Plaintiffs'] respective sales codes," and "unlawfully terminating [Plaintiffs'] franchises." *Id.* ¶ 2. Plaintiffs initially filed their Complaint in state court, but Defendant subsequently removed the case to this Court on March 21, 2019. D.E. 1. In addition to answering the Complaint, Defendant also moved to strike paragraphs 3, 4, 7, 29, 30, 31, and 32. D.E. 4, 5. Plaintiffs opposed Defendant's motion to strike, D.E. 11, to which Defendant replied, D.E. 13.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 12(f) states that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Matter is deemed "immaterial" when it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Takeda Pharm. Co., Ltd. v. Zydus Pharm. USA Inc.*, No 10-1723, 2011 WL 2115819, at *8 (D.N.J. May 25, 2011) (citation omitted). Likewise, matter is "impertinent" when it "does not pertain, and is not necessary, to the issues in question." *Id.* And matter is "scandalous" where it "improperly casts a derogatory light on someone . . . reflect[s] cruelly upon the defendant's moral character, use[s] repulsive language or detract[s] from the dignity of the court." *Id.* The decision is discretionary. *F.T.C. v. Hope Now*

---

[2] The following facts are derived from Plaintiffs' Complaint ("Compl."), D.E. 1.

2

*Modifications, LLC*, No. 09-1204, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011). However, "[a]s a general matter, motions to strike under Rule 12(f) are highly disfavored." *Thompson v. Real Estate Mortg. Network, Inc.*, No. 11-1494, 2018 WL 4604310, at *2 (D.N.J. Sept. 24, 2018) (citing *F.T.C*, 2011 WL 883202, at *1).

Importantly, "even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *F.D.I.C. v. Modular Homes, Inc.*, 859 F. Supp. 117, 120 (D.N.J. 1994) (citing *Glenside West Corp. v. Exxon Corp.*, 761 F. Supp. 1100, 1115 (D.N.J.1991)). Indeed, motions to strike "will generally be denied unless the allegations have *no possible relation* to the controversy and may cause prejudice to one of the parties." *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (emphasis added) (citing *Tonka Corp. v. Rose Art Industries, Inc.*, 836 F. Supp. 200, 217 (D.N.J.1993)) (internal quotations omitted).

## III. LAW AND ANALYSIS

Defendant moved to strike paragraphs 3, 4, 7, 29, 30, 31, and 32 of the Complaint, alleging that these paragraphs contain "redundant, immaterial, impertinent, or scandalous matter" in violation of Rule 12(f). Def.'s Reply at 2. Turning to Plaintiffs' allegations, Paragraph 3 states:

> As more fully described below, [Defendant] took these unlawful actions in order to meet lofty sales objectives set by Carlos Ghosn, the disgraced former CEO of [Defendant's] corporate parent, Nissan Motor Co., Ltd. ("Nissan").

Compl. ¶ 3. Paragraph 4 states:

> Mr. Ghosn rescued Nissan from bankruptcy in the late 1990s and developed a rock-star reputation in the auto industry, both for his shrewd management approach and lavish lifestyle. The perennial taskmaster, Mr. Ghosn drove Nissan and [Defendant] to reach increasingly unobtainable goals. Rather than push back, [Defendant] went all in and pushed its dealers to sell more and more cars by any means necessary.

3

*Id.* ¶ 4. Paragraph 7 states:

> Mr. Ghosn now faces criminal charges in Japan based on allegations of lavish, unreported compensation. Key executives at [Defendant] and Nissan have quit or are also under criminal investigation.

*Id.* ¶ 7. Paragraph 29 states:

> [Automaker] Renault sent Mr. Ghosn to Nissan to turn it around. Known as "Le Cost Killer," Mr. Ghosn made deep cuts to Nissan's operations. Those cuts included closing factories, cutting off poorly performing suppliers, and slashing headcounts.

*Id.* ¶ 29. Paragraph 30 states:

> Mr. Ghosn turned Nissan around and returned it to profitability soon after taking it over. Mr. Ghosn didn't rest on his laurels, however. He continued to drive Nissan and Renault to achieve ever-increasing objectives.

*Id.* ¶ 30. Paragraph 31 states:

> In 2011, Mr. Ghosn tasked Nissan with increasing its global market share to 8% by 2017 and its profit margins to 8% under [a plan called] "Power 88."

*Id.* ¶ 31. Paragraph 32 states

> Mr. Ghosn pushed especially hard on [Defendant's] U.S. operations by setting an even higher market share goal than under Power 88: he demanded [Defendant] achieve 10% market share by 2017.

*Id.* ¶ 32.

Defendant asserts that these allegations about "Mr. Ghosn and Nissan Motor have no relationship to the issues in [the] case and are intended solely to cast [Defendant] in a bad light by association with the former senior executive of [Defendant's] parent company[.]" Def.'s Br. at 4. Defendant notes that while Mr. Ghosn was the subject of a publicized criminal prosecution in Japan, he was the CEO of Nissan Motor rather than an executive of Defendant. Defendant continues that Plaintiffs' allegations regarding Mr. Ghosn have "no bearing on [Defendant's]

4

vehicle allocation practices, [Defendant's] sales reporting, or whether [Defendant] had statutory 'good cause' to determine that [Plaintiffs] breached [their] dealer agreements with [Defendant]." *Id.* at 5. As such, Defendant argues that Plaintiffs' allegations "are intended only to distract the Court and embarrass" Defendant. *Id.*

In response, Plaintiffs argue that the Complaint "directly ties Mr. Ghosn's management style and directional goals for Nissan Motor into the actions undertaken by [Defendant]" because the Complaint alleges that Mr. Ghosn "pushed [Defendant] to hit unrealistic sales goals" which, in turn, created "a culture of unreasonable sales expectations to be met at any cost." Pls.' Opp. at 2. Plaintiffs argue that Mr. Ghosn's directives essentially pressured Defendant into "stuff[ing] cars into Plaintiffs' inventory that they did not order and . . . report cars as sold that Plaintiffs had not sold." *Id.* at 2-3. Accordingly, Plaintiffs contend that "Mr. Ghosn's plan for [Defendant] is directly at the heart of Plaintiffs' allegations, [] prov[ing] motive and intent." *Id.* at 3.

Here, Defendant has not shown that Plaintiff's allegations concerning Mr. Ghosn and Nissan Motor "*have no possible relation* to the controversy and may cause [unfair] prejudice to [Defendant]." *Garlanger*, 223 F. Supp. 2d at 609 (emphasis added). Rather, it appears that the allegations involving Mr. Ghosn do, in fact, relate to the case presently before this Court. Plaintiffs point to Mr. Ghosn as an impetus for the alleged improper behavior of Defendant. Accordingly, in light of the fact that "motions to strike under Rule 12(f) are highly disfavored," the Court declines to exercise its discretion to strike paragraphs 3, 4, 7, 29, 30, 31, and 32 from Plaintiffs' Complaint. *See F.T.C.*, 2011 WL 883202, at *1 ("[A] district court's decision whether to grant a motion to strike under Rule 12(f) is discretionary."). Defendants motion to strike is therefore denied.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to strike paragraphs 3, 4, 7, 29, 30, 31, and 32 from Plaintiffs' Complaint is **DENIED**. An appropriate order accompanies this Opinion.

Dated: December 26th, 2019

John Michael Vazquez, U.S.D.J.